**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

NOBLE INTERNATIONAL, LTD, et al.,

    Debtor,

_____/

COMERICA BANK,

CIVIL CASE NO. 09-11744
HON. MARIANNE O. BATTANI

    Appellant,
v.

NOBLE INTERNATIONAL, LTD, et al.,

    Appellees.

_____/

**OPINION AND ORDER REVERSING IN PART
THE BANKRUPTCY COURT'S ORDERS AND
REMANDING FOR FURTHER PROCEEDINGS**

Before the Court is Comerica Bank's (Comerica or Lender) appeal of the bankruptcy court's orders authorizing Debtors[1] to use Lender's cash collateral. See April 27, 2009, Final Order Regarding Adequate Protection as to Comerica Bank Claim to Certain Bank Account and Second Interim Order Authorizing Post Petition Financing and Use of Cash Collateral and Final Order Authorizing Postpetitioner Financing and Use of Cash Collateral Granting Plaintiff's Motion for Summary Judgment (Doc. No. 1).

---

[1]Debtors include Noble International, Ltd, Noble Advanced Technologies, Inc., Noble Land Holdings, Inc., Noble Manufacturing Group, Inc., Noble Metal Processing-Kentucky, G.P., Noble Metal Processing, Inc., Noble Metal Processing-Indiana, Inc., Noble Metal Processing-New York, Inc., Noble Metal Processing-Ohio, LLC, Noble Metal Processing-West Michigan, Inc., Noble Swiss Holdings, LLC, Noble TSA LLC, Noble Tube Technologies, LLC, Prototech Laser Welding, Inc. (d/b/a LWI Laser Welding International); and Tailor Steel America, LLC.

The Court has reviewed the pleadings, and finds oral argument would not aid in the resolution of this motion. See E.D. Mich. LR 7.1(e)(2). For the reasons the follow, the orders are **REVERSED in part** and **REMANDED** for further proceedings.

I. PROCEDURAL HISTORY

The facts underlying the dispute are uncontested. On April 15, 2009, Debtors filed a voluntary petition in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. Their chapter 11 cases are jointly administered, and they remain debtors-in-possession pursuant to §§ 1107, 1108 of the Bankruptcy Code.

Debtors manufacture automotive component parts for sale to General Motors Corporation, Ford Motor Company, and Chrysler LLC as well as their affiliates (hereinafter "Customers"). Certain Debtors, including Noble International Ltd (NIL), are indebted to Comerica under various loan and security documents. These prepetition loan documents, which have been amended, modified or supplemented, provided working capital financing for the benefit of Debtors. As part of these documents, these Debtors granted Comerica a security interest in all or substantially all of their accounts, inventory, the stock or equity interests of certain debtor's subsidiaries, general intangibles, equipment, and other collateral described in the prepetition loan documents. The indebtedness owing under the prepetition loan documents includes reimbursement obligations for outstanding letters of credit Comerica issued, plus accrued but unpaid interest and certain costs and expenses (hereinafter the "Credit Agreement

2

Obligations").[2]  On the date Debtors filed their petition, NIL owed $2,000,000 plus fees and expenses under the Credit Agreement Obligation.  Aff. of Vladimir R. Slapak at ¶ 3.

In addition to the Credit Agreement Obligation, Comerica has a "security interest in and the right of setoff to any and all property of [NIL] in the possession of [Comerica]", pursuant to a Limited Guaranty under which NIL guaranteed certain liabilities of Pullman de Queretaro, S.A. de C.V. (Pullman), a nondebtor affiliate under a related term loan and a revolving credit loan (hereinafter the "Mexican loan").[3]  The Limited Guaranty is not secured by any other collateral.

On March 2, 2009, the Mexican loan matured.  Comerica agreed to forbear from exercising remedies until March 23, 2009.  Comerica continued to forbear with respect to defaults on the Mexican Loan through the Petition Date.  On the date of the petition, NIL owed $4,856,014.35 plus fees and expenses.  Slapak Aff. at ¶ 5.

When the bankruptcy petition was filed, NIL had an account balance at Comerica in the amount of $1,260,476.24.  Slapak Aff. at ¶ 6.  Comerica notified NIL the day after the petition was filed that Comerica intended to enforce its security interest and apply the prepetition deposit to pay down the Mexican loan.

On the Petition Date, Debtors filed a motion seeking entry of an interim order authorizing postpetition financing, authorizing the use of cash collateral, granting adequate protection, and scheduling a final hearing (hereinafter the "DIP Financing Motion").  NIL mistakenly stated that its entire debt to Comerica had been sold to the

---

[2]The bankruptcy court referred to this obligation as the "Primary Obligation".

[3]The bankruptcy court referred to this obligation as the "Secondary Obligation".

3

Customers and requested permission to use the cash collateral for payment of operating expenses and working capital. Consequently, in the DIP Financing Motion, Debtors sought the use of cash collateral based on their assumption that only the Customers have an interest because the Customers intended to purchase all of Comerica's existing loans to the debtors and all of Comerica's rights under the prepetition loan documents. Under this course of action, the Customers would obtain all rights of Comerica in the bank accounts at Comerica and Debtors did not need Comerica's approval to use the Account Deposit. Accordingly, Debtors did not propose adequate protection. Because this purchase did not occur as anticipated, Comerica remained a prepetition lender.

The bankruptcy court heard oral argument on the DIP Financing motion on April 17, 2009. Comerica objected to the use of its cash collateral. The hearing was adjourned to April 24, 2009, to allow Debtors time to amend the cash collateral motion.

On April 21, 2009, Comerica filed a motion requesting relief from the automatic stay to allow it to apply NIL's account balance against the Mexican Loan pursuant to the Limited Guaranty. In addition, Comerica filed an objection to Debtors' DIP Financing Motion. According to Comerica, the relief request in the DIP Financing Motion failed to provide Comerica with adequate protection for use of the account balance.

On April 22, 2004, Debtors filed a Supplement to the Cash Collateral Motion, requesting an interim order authorizing the use of cash collateral to pay down the Credit Agreement Obligation. The following day, Comerica filed its Supplemental Objection, maintaining that use of the cash collateral to pay the Credit Agreement Obligation did not adequately protect its security interest in the Limited Guaranty.

The bankruptcy court disagreed, finding the use of the Account Balance to pay down the Credit Agreement Obligation was voluntary, and that Comerica's security interest was adequately protected. The bankruptcy court's Final Order Regarding Adequate Protection as to Comerica Bank Claim to Certain Bank Account and Second Interim Order Authorizing Postpetition Financing and Use of Cash Collateral, noted that Debtors were party to various loan and security documents with Comerica Bank under which working capital financing was provided to or for the benefit of Debtors.

Paragraph F of the Order provides:

As part of the Prepetition Loan Documents, certain of the Debtors granted Comerica a security interest in all or substantially all of such Debtors' respective accounts, inventory, the stock or equity interest of certain Debtors' subsidiaries, general intangibles, equipment and other collateral described in the Prepetition Loan Documents (collectively, the Prepetition Working Capital Collateral"). The indebtedness owing under the Prepetition Loan Documents (including reimbursement obligations for outstanding letters of credit issued by Comerica (the "letters of Credit")), plus accrued but unpaid interest and certain costs and expenses provided for in the Prepetition Loan Documents is referred to collectively as the "Primary Comerica Obligation" [referred to by this Court as the Credit Agreement Obligation].

NIL is a guarantor of the obligations to Comerica of Pullman de Queretaro, S.A. de C.V., a nondebtor affiliated under a Limited Guaranty dated September 19, 2008 ("the Guaranty" and the obligation, the "Secondary Comerica Obligation") [referred to by this Court as the Limited Guaranty] and Comerica asserts a security interest in and the right of setoff as against a deposit account owned by NIL (the NIL Bank Account") and maintained by Comerica (collectively, the "Secondary Setoff and Secured Claim").

Debtors had insufficient funds to make payroll, purchase raw materials and other supplies and the cash collateral alone is not sufficient to fund ongoing operations. Para. N, O. They require use of cash collateral under § 363(c) of the Code and financing under § 364 of the Code to fund day-to-day operations to maintain production for their customers.

5

Id.

> The bankruptcy court further found
>
> pursuant to §§ 363[4] and 553[5] of the Code and applicable State law, and in the exercise of the Court's equitable powers, that in adequately protecting Comerica's interest in the Prepetition Working Capital Collateral that secures the Primary Comerica Obligations, the Debtor has the right to direct the application of the Bank Account Balance toward payment of the Primary Comerica Obligations. The application of the Bank Account Balance toward payment of the Primary Comerica Obligations, and the other provisions of this Order, constitute adequate protection of Comerica's interest in the NIL Bank Account.

Aril 27, 2009 Order, Para. X.

## II. STANDARD OF REVIEW

In bankruptcy cases, the district court is required to review the bankruptcy court's legal conclusions *de novo* and review factual questions under a clearly erroneous standard. In re Burns, 322 F.3d 421, 425 (6th Cir. 2003).

## III. ANALYSIS

Comerica brings three issues on appeal: first, whether the bankruptcy court erred when it held that Debtors could decide which obligation to pay; second, whether the bankruptcy court erred when it held Debtors could use cash collateral without providing adequate protection of Comerica's interest in the collateral; and third, whether the

---

[4] Pursuant to § 363(a), which governs among other things, the use of property, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. . . ."

[5] Section 553 governs setoff, and provides that except as provided in section 363 "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . ."

bankruptcy court's ruling violated the Fifth Amendment. The Court discusses the merits below.

**A. Direction of Payment**

The parties contest whether Debtors could determine to which Comerica debt the Account Balance would be applied. Debtors argued that under Michigan law, they were free to specify that the Credit Agreement Obligation be paid first. Comerica contends that the payment was involuntary; therefore, it could apply the funds to the Mexican Loan through the Limited Guaranty.

In reliance upon Michigan law, the bankruptcy court deemed the payment voluntary. In People ex rel. Michigan Electric Supply Co. v. Vandenburg Electric Co., 72 N.W.2d 216, 218 (Mich. 1955), the state supreme court articulated the circumstances governing when and how creditors and debtors may direct application of payments:

> [A] debtor may direct application of a payment before or at the time it is made, but, if he does not do so, the creditor may apply it as he pleases either at the time of payment or afterwards, if before controversy arises concerning it; and in the absence of such action by either debtor or creditor, if the credit merely appears in the general account and there is no evidence of any understanding to the contrary, the credit will be considered as applied to debits in the order of time in which the debits occurred. . . .

Accord In re Corradini, 276 B.R. 571, 576 (W.D. Mich. 2002) (addressing the designation of payments made before the debtor filed bankruptcy and stating that, under Michigan law, if debtor does not direct how allocation should be made, " 'the creditor may apply [the payment] as he pleases either at the time of payment or afterwards, if before the controversy arises concerning it' ").

7

On the surface, these cases support Debtors' argument that it was entitled to determine which obligation to pay first. Nevertheless, they are distinguishable in that they address situations in which payment is made by the debtor without direction as to which debt to pay before the dispute arose, thus giving the creditor an opportunity to apply the payment as it wished. Neither case addresses post bankruptcy direction of a payment by a debtor. In contrast to the creditors in <u>Vandenberg Electric</u>, and <u>In re Corradini</u>, Comerica had no such opportunity because Debtors filed bankruptcy before the dispute over how to apply the funds arose.

Under the facts of this case, the Court finds the payment cannot be characterized as voluntary. First and foremost, in <u>DuCharmes & Co. v. United States</u>, (<u>In re DuCharmes & Co.</u>), 852 F.2d 194, 196 (6th Cir. 1988), the Sixth Circuit held that "payments made to the IRS on pre-petition tax liabilities by a Chapter 11 debtor ought to be considered "involuntary payments." Accordingly, it held that the IRS, not the debtor, was entitled to allocate the payment. Although <u>DuCharmes</u> addressed tax liabilities in the context of reorganization, in reaching its decision, the Sixth Circuit explicitly rejected the notion that a payment by a debtor in bankruptcy should be deemed voluntary absent a distraint or levy. Moreover, Debtors have provided no basis to conclude that the nature of the debt distinguishes this case from <u>In re DuCharmes</u>. Therefore, the Court declines to find the payment of an antecedent debt is voluntary.

Debtors' reliance on case law from other circuits, nonbankruptcy cases, and district court opinions rendered before <u>In re DuCharmes</u> is misplaced. This Court concludes that under the Sixth Circuit decision, Debtors had no right to direct how the Account Balance was applied.

8

Finally, the Court is not persuaded to the contrary by United States v. Energy Res. Co., 495 U.S. 545 (1990). In that case, the Supreme Court determined that for purposes of a reorganization, "a bankruptcy court has the authority to apply the payments to trust fund liabilities" when the "designation is necessary to the success" of the reorganization plan regardless of whether the payments are considered involuntary." Id. at 549. Debtors assert that the Customers were the only lenders willing to finance their chapter 11 proceedings given the dire conditions in the lending market at the time. The Customers also were on the brink of filing for bankruptcy protection. Debtors assert that had the bankruptcy court denied their ability to designate that the Credit Agreement Obligation be paid first, the shortfall in funding would have resulted in the Customers unwillingness to finance the continued operations.

Because this is a liquidation, not a reorganization plan, the Court rejects Debtors' contention that the Supreme Court decision is dispositve. Debtors fail to cite any authority that has expanded the holding of Energy Res. Co., beyond the confines of a reorganization. Accordingly, the Court directs its attention to whether Comerica was adequately protected.

### B. Adequate Protection

The parties do not dispute the finding that Debtors "urgently require[d] use of cash collateral under § 363(c) of the Code and financing under § 364 of the Code to fund day-to-day operations to maintain production, for their Customers." April 27, 2009 Order at ¶ P. The bankruptcy court found that continuing production was necessary to preserve Debtors' operations. "Debtors believe that their inability to fund continuing production would result in a material, negative impact on their businesses, all to the

9

prejudice and detriment of Debtors' creditors, customers, and employees." Id. Because Comerica objected to the use of the cash collateral, the bankruptcy court addressed the requirement that arises when a debtor is allowed to use an unwilling creditor's cash collateral. Specifically, under the bankruptcy code, the debtor must provide the creditor with adequate protection of the creditor's interest in the collateral.

According to Debtors, the requirement was met because payment on the Credit Agreement Obligation depleted the prepetition deposit and rendered the Limited Guaranty unsecured. Debtors contend that because the bankruptcy code only affords Comerica with adequate protection up to the value of its interest, it had no right to adequate protection in the Account Balance after payment of the Credit Agreement Obligation was made. In effect, there no longer was an interest once the Limited Guaranty of the Mexican loan became unsecured. In contrast, Comerica wanted the funds applied to the obligation for which no other adequate repayment source existed–the Limited Guaranty–rather than the Credit Agreement Obligation, which was secured by collateral beyond the Account Balance.

The bankruptcy court found, "The application of the Bank Account Balance toward payment of the Primary Comerica Obligations, and the other provisions of this Order, constitute adequate protection of Comerica's interest in the NIL Bank Account." Aril 27, 2009 Order, ¶ X. The bankruptcy court ordered:

> If the excess Cash Collateral plus any cash collateral received by the Debtors or Comerica exceeds the interim Cash Collateral Limit, such excess shall be segregated held in a deposit account at Comerica pending further order of this Court; provided, however, that such excess shall not subject to any claims, liens, or setoff rights in respect of the Secondary Comerica Obligations."

April 27, 2009 Order at ¶ 2 E.

The bankruptcy court additionally held that Comerica was entitled to a "first priority lien on all postpetition accounts, inventory and general intangibles acquired by the Debtors on or after the Petition Date" as well as an administrative expense claim as adequate protection of Comerica's interest, if any, from post petition use of the Prepetition Working Capital Collateral that secures the Primary Comerica Obligations (but not as adequate protection of any liens or setoff rights in respect of the Secondary Comerica Obligations). April 27, 2009 Order at ¶ 6 (a) and (b).

Once the bankruptcy court found Debtors could direct the payment, it made no provision for adequate protection relative to the Limited Guaranty of the Mexican Loan. However, Section 4 of the Limited Guaranty grants Comerica a security interest in the Comerica prepetition deposit. Guaranty at § 4. Comerica asserts that because the prepetition deposit was Comerica's cash collateral for the Mexican loan, it was entitled to provide adequate protection of the interest prior to Debtors using the funds. 11 U.S.C. § 363. This Court agrees.

The transcript of the hearing reveals that the bankruptcy court found the security interest in the Limited Guaranty attenuated because NIL's role was as guarantor. See hearing transcript at 12, 18, 19, 27. Characterizing the Limited Guaranty as a "Secondary Obligation" ignores language contained in Section 8, entitled "Waivers". It reads as follows, "NIL waive[s] any right to require the Bank to . . . proceed against any person or property" or "pursue any other remedy in [Comerica's] power." See Ex. 45. Moreover, during the hearing, Debtors admitted that Comerica had the right to proceed against the Account Balance. Here, there is one common source of secured collateral,

the Account Balance.  There are two separate claims on the Account Balance, both asserted by Comerica.  Without question, one of the secured debts must be paid before the other.  Because payment was not voluntary, Comerica, not Debtors, had the right to designate which debt would be paid first.  Because Comerica chose the Limited Guaranty of the Mexican Loan, it as left with inadequate protection.

In light of the Court's decision, there is no need to address Comerica's contention that the orders violated the Constitution.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the bankruptcy court's orders are **REVERSED in part** and this matter is **REMANDED** for further proceedings**.**

**IT IS SO ORDERED.**


        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: March 3, 2010

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt<br>Case Manager